HAROLD B. & JEAN C. DAHL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dahl v. Commissioner
Docket No. 5121-73.
United States Tax Court
T.C. Memo 1974-190; 1974 Tax Ct. Memo LEXIS 130; 33 T.C.M. (CCH) 813; T.C.M. (RIA) 74190; July 25, 1974, Filed. Harold B. Dahl, pro se. Thomas N. Tomashek, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent has determined a $699.17 deficiency in petitioner's income tax for the calendar year 1970. The sole issue relates to the applicability of section 483 [1] to payments *131 received by petitioner in 1970. FINDINGS OF FACT Harold B. Dahl and Jean C. Dahl are husband and wife who resided in Enumclaw, Washington, during the taxable year in issue. In 1955 petitioners acquired a parcel of real estate (approximately 20 acres) located in Washington. Their basis in this property was $2,766.66. On or about January 10, 1968, petitioners contracted to sell this land to Wood Development Co. (hereinafter Wood) for $65,000. Wood agreed to subdivide the land approximately 65 residential lots and construct houses thereon. Petitioners were to be paid $1,000 on the closing of the sale of each of the first 65 lots or eight months after the start of construction, whichever occurred first. Wood agreed to commence construction on 15 lots by April 30 of 1968, 1969, 1970, and 1971. It further agreed to commence construction on the remaining lots by April 30, 1972. Because Bill Wood, president of Wood, was a close friend of petitioners and because they were satisfied with their profit on the sale, petitioners provided that the purchase *132 was to be completely interest-free. As security, petitioners retained a mortgage on the land. For tax purposes, petitioners elected to report the capital gain realized on the sale on the installment method. Applying a 95.7-percent "profit rate" to their receipt of $6,477.43 in 1968, petitioners reported taxable gain of $6,198.90 on their 1968 tax return. On their 1970 return, they applied the same rate to the $45,000 received in that year and reported long-term capital gain of $43,065. On the ground that section 483 applied to the payments received by petitioners in 1970, respondent determined that $4,895.25 of the payments received in 1970 represented imputed interest income, not long-term capital gain. OPINION Section 483(a) provides: Amount Constituting Interest. - For purposes of this title, in the case of any contract for the sale or exchange of property there shall be treated as interest that part of a payment to which this section applies which bears the same ratio to the amount of such payment as the total unstated interest under such contract bears to the total of the payments to which this section applies which are due under such contract. Section 483(b) provides *133 the method for computing "total unstated interest" and specifies that - the present value of a payment shall be determined, as of the date of the sale or exchange, by discounting such payment at the rate, and in the manner, provided * * * by the Secretary or his delegate. Those regulations appear as sections 1.483-1 and 1.483-2, Income Tax Regs. There is no question but that the amount of imputed interest income set forth in respondent's deficiency notice has been calculated in accordance with the statute and the regulations. [2]
Petitioners' primary attack is on the constitutionality of section 483. One prong of their attack is the due process clause of the Fifth Amendment, but that claim has been categorically rejected, even where the retroactive application of section 483 was involved. David O. Rose, 55 T.C. 28, 30 (1970); Raymond Robinson, 54 T.C. 772, 776 (1970), affirmed per curiam, 439 F.2d 767 (C.A. 8, *134 1971); Shanahan v. United States, 315 F. Supp. 3, 6 (D. Colo. 1970), affd. 447 F.2d 1082 (C.A. 10, 1971). Petitioners also seem to suggest that the enactment of section 483 violates the prohibition against the impairment of the obligation of contracts contained in the United States Constitution, article I, section 10, clause 1. Aside from the fact that this constitutional provision on its face applies only to the states (see Century Arms, Inc. v. Kennedy, 323 F. Supp. 1002, 1014 (D. Vt. 1971), affirmed per curiam, 449 F.2d 1306 (C.A. 2, 1971)), the fact of the matter is that the application of section 483 leaves the contractual arrangement between petitioners and Wood totally unimpaired. Compare Continental Bank v. Rock Island Ry., 294 U.S. 648, 680 (1935). What petitioners are seeking is the grant of a vested right to report their entire profit at capital gains rates rather than at rates applicable to ordinary income. This is nothing more than a plea for a guarantee of rates of taxation, which is obviously without merit. Petitioners also argue that respondent is not authorized to examine the 1968 sale, under *135 the guise of auditing their 1970 return, because 1968 was previously audited and closed by respondent. In support of their argument, petitioners cite section 7605(b). This argument misses the mark, however, for, even if we assume, without deciding, that respondent is now barred from redetermining petitioner's tax liability for 1968, that is of no consequence. The instant case involves an audit and determination of deficiency for the taxable year 1970. Respondent's reference to 1968 was merely to ascertain facts and figures relevant to the treatment of their 1970 income and was clearly proper. Norda Essential Oil & Chemical Co. v. United States, 230 F.2d 764 (C.A. 2, 1956). Nor can we find any basis in the facts presently before us to estop respondent from determining the existence of imputed interest for 1970 or later years. David O. Rose, supra, 55 T.C. at 32. Finally, petitioners' argument that they had no tax avoidance motive is of no avail. Their desire to do a favor for their friend by not charging him interest cannot justify a department from the clear statutory mandate. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended and in effect for the taxable year in issue. ↩
2. The seemingly large amount of imputed interest in relation to the amount paid in 1970 stems from the fact that the calculation covers a period of approximately two years from the date of the sale to the date of payment. ↩